UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KEENAN K. COFIELD,                  )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civ. No. 14-0055 (KBJ)
                                    )
UNITED STATES OF AMERICA, *et al.*, )
                                    )
            Defendants.             )
_____ )

# MEMORANDUM OPINION

Plaintiff Keenan K. Cofield ("Plaintiff") is a Maryland state prisoner incarcerated at the Eastern Correctional Institution in Westover, Maryland.[1] In December of 2013, Plaintiff lodged a complaint in the Superior Court of the District of Columbia against the United States and various federal agencies, President Barack Obama, the United States House of Representatives, and the United States Senate (collectively, "Federal Defendants"), as well as the Internet Corporation for Assigned Names and Numbers ("ICANN") and that organization's President, Rod Beckstrom. Plaintiff demands billions of dollars in damages and injunctive and declaratory relief.

On January 15, 2014, the House of Representatives removed the case to this Court pursuant to 28 U.S.C. §§ 1442, 1446, with the consent of the remaining Federal Defendants. (Notice of Removal, ECF No. 1.) On February 5, 2014, the Court granted the House of Representatives' motion to dismiss in light of Plaintiff's consent to the

---

[1] Plaintiff is apparently serving a ten-year sentence that the Circuit Court of Baltimore County imposed on December 7, 2011, for a theft conviction. *See Cofield v. Fed. Bureau of Prisons*, No. 12-1178, 2012 WL 6201205, at *1 (D. Md. Dec. 11, 2012).

1

dismissal. (*See* Order, ECF No. 6.) Presently before the Court is the remaining Federal Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or for summary judgment under Rule 56. (*See* Fed. Defs.' Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., ECF No. 9, at 1.) [2] In addition, ICANN has moved to dismiss under Rule 12(b)(5) for insufficient service of process. (*See* Defs.' Internet Corp. for Assigned Name and Numbers & Richard Beckstrom's Mot. to Dismiss, ECF No. 27; Mem. In Supp. of Defs. Internet Corp. for Assigned Name and Numbers & Rod Beckstrom's Mot. to Dismiss ("ICANN's Mem."), ECF No. 27-2, at 1.) Plaintiff has filed a response to the Federal Defendants' motion and has moved for summary judgment or a default judgment "specifically against Defendants ICANN[.]" (Pl.'s Mot. for Summ. J., or in the Alternative Mot. for Default J. & Response to U.S. Gov't's Only Mot. to Dismiss, ECF No. 13.)

Because this Court concludes that it lacks jurisdiction over Plaintiff's claims against the Federal Defendants, the Court will **GRANT** the Federal Defendants' motion under Rule 12(b)(1), and will **REMAND** Plaintiff's case against ICAAN and Beckstrom to the Superior Court.[3] A separate order consistent with this opinion will follow.

**I.     BACKGROUND**

The two-count complaint in this matter is perplexing. The Court has read it liberally and considers the following information to be relevant to the disposition of the case.

---

[2] Page numbers throughout refer to those the Court's electronic filing system assigns.

[3] Plaintiff also seeks to compel the United States and ICANN to produce certain documents. (*See* Request for Production of Documents—By Plaintiff, ECF No. 20.) Because this Court finds that it lacks jurisdiction over Plaintiff's claims against the Federal Defendants, it will deny any aspect of the motion that pertains to the Federal Defendants, leaving the remainder for the Superior Court to resolve.

2

Plaintiff alleges that, in approximately 1997 or 1998, the Department of Commerce (via the National Institute of Standards and Technology and the National Telecommunications and Information Administration) issued a proposal that "allowed for the creation and formation of" ICANN. (Compl., ECF No. 1-1, at 7.) According to Plaintiff, ICANN is "a California non-profit, which . . . oversees, the Internet, regulates Domain names, web addresses, the organization in charge of creating hundreds of additional address suffixes, and more." (*Id.*; s*ee also* ICANN's Mem. at 2 (explaining that ICAAN is a Los Angeles, California-based "not-for-profit public benefit corporation" that "administers the Internet's domain name system [] on behalf of the Internet community, pursuant to a series of agreements with the United States Department of Commerce." (citation omitted)).) Plaintiff also describes ICANN as "a single white owned non-profit government controlled business monopoly[.]" (Compl. at 9.) He states that "[a]ll [he] wants is the legal right for the process and competition to be fair, to be open, and equal to all no matter, race and other factors, to provide and expand the existing internet/technology system to more people in different ways . . . and the right to open and do business like ICANN[.]" (*Id*. at 7.)

In Count 1 of the Complaint, Plaintiff challenges the Defendants' alleged denial in September 2013 of his "several" Freedom of Information Act ("FOIA") requests for records pertaining to ICANN, "includ[ing] the 1998 proposal that led to [its] creation[.]" (*Id*. at 6.) In Count 2 of the Complaint, Plaintiff accuses the federal government of engaging in widespread illegal and unfair business practices with a "non-government servant, agent, or contractor" to the detriment of "minority or blacks," who, according to Plaintiff, cannot "engage with ICANN [] for assigned names and

3

numbers[.]" (*Id.* at 9.) Plaintiff alleges, among other wrongs, that the government has "issued a blank check to allow [] ICANN a[n] un-restricted license with a BIG expensive specific duty and title[.]" (*Id.*) Plaintiff also states that he is Black, and "[w]e as a race of people have been intentionally omitted, to be left behind when it comes to technology [] by design[.]" (*Id.* at 11.) Plaintiff continues in this manner, directing his accusations in large part at ICANN. Ultimately, the complaint demands a judgment of $10 billion in punitive damages, $3 billion in compensatory damages, and "a guaranteed government loan, grants and/or line of credit of . . . [one billion] dollars, to start and further develop[] Plaintiff[']s business ideas, business plans, business models to concepts into jobs and careers, in the tech profession." (*Id.* at 23, 24.) In addition, Plaintiff seeks an injunction barring ICAAN from, among other conduct, issuing "any . . . new web addresses or domain name suffixes" and declaratory relief. (*Id.* at 24-35.)

In their motion to dismiss, the Federal Defendants contend *inter alia* that this Court lacks subject matter jurisdiction by virtue of four jurisdictional barriers: Sovereign Immunity; the derivative jurisdiction doctrine; the Speech or Debate Clause (as to the U.S. Senate); and Plaintiff's lack of standing as to Count II of the Complaint. (*See* Mem. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, Mot. for Summ. J. ("Fed. Defs.' Mem."), ECF No. 9-1, at 11- 18.) For their part, ICANN and Beckstrom have jointly moved to dismiss under Rules 12(b)(5) and 4(m), alleging that Plaintiff never properly served them with the complaint, and that they have never waived service of process. (ICANN's Mem. at 4-5.)

4

As explained below, this Court concludes that the claims against the individual federal officials in their personal capacities are not properly brought and that it does not have jurisdiction over Plaintiff's claims against the Federal Defendants by virtue of sovereign immunity and the derivative jurisdiction doctrine; consequently, the Court declines to consider the Federal Defendants' other (alternative) grounds for dismissal. In addition, the Court will remand what remains of the case—*i.e.*, Plaintiffs' claims against ICCAN and Beckstrom—leaving those defendants' service arguments for the Superior Court to resolve. *See McKoy-Shields v. First Wash. Realty, Inc.*, No. 11-01419, 2012 WL 1076195, at *2-3 (D.D.C. Mar. 30, 2012) (remanding remainder of removed case after finding that court lacked jurisdiction over claims against federal agency).

## II. LEGAL STANDARDS FOR MOTION TO DISMISS UNDER RULE 12(B)(1)

If a court lacks subject matter jurisdiction to entertain a claim, it must dismiss that claim. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). Where, as here, a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), "the court must first examine the Rule 12(b)(1) challenges" because a dismissal for lack of subject matter jurisdiction renders "the [other] accompanying defenses and objections [] moot[.]" *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (citations and internal quotation marks omitted).

It is well-settled that the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted); *Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002) (citation omitted). Indeed, when it

comes to Rule 12(b)(1), it is "'presumed that a cause lies outside [the federal courts'] limited jurisdiction,' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction[.]" *Muhammed v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (first alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) and citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)).

"[T]he court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under . . . Rule 12(b)(6)." *Schmidt*, 826 F. Supp. 2d at 65 (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003), *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 12 (D.D.C. 2010), and *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)). Still, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Epps*, 719 F. Supp. 2d at 13 (citing *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003)), but it need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations[,]" *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

### III. ANALYSIS

#### A. Plaintiff's Individual-Capacity Claims

As an initial matter, Plaintiff states that "all defendants are being sued in their individual and official capacities as U.S. Government officials, individual persons and/or as agents, government contractors or other servents [sic] of the United States[.]" (Compl. at 5.) He invokes the All Writs Act, 28 U.S.C. § 1651; the FOIA, 5 U.S.C.

6

§ 552; the Privacy Act, 5 U.S.C. § 552a; the Declaratory Judgment Act, 28 U.S.C. § 2201; and the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1986, 1988. (*Id*.) But this Court concludes that there is no legal basis upon which Plaintiff can sue the defendants named in this lawsuit in their personal capacities.

To begin with, the organizational defendants—including the United States and its agencies, the Senate, and ICAAN—are not subject to suit in their "individual" capacities because "[p]ersonal-capacity suits seek to impose personal liability upon *a government official* for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (emphasis added). Turning to the individual defendants named in the complaint, President Obama, Attorney General Eric Holder, and Commerce Secretary Penny Pritzker (who assumed office on June 26, 2013) cannot be held personally liable under Section 1983, because, by its terms, that statute does not apply to federal officials. *See* 42 U.S.C. § 1983 (creating a cause of action for deprivation of constitutional rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia.") Nor can those individuals be held personally liable under any of the other statutes Plaintiff has invoked. *See Johnson v. Exec. Off. for United States Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002) (FOIA provides no private right of action against individuals); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (concluding that "the district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under the Privacy Act or FOIA" (citations omitted)); *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("It is a well-established rule that the Declaratory Judgment Act is

7

not an independent source of federal jurisdiction [; r]ather, the availability of declaratory relief presupposes the existence of a judicially remediable right." (internal quotation marks, alterations, and citations omitted)); *West v. Spellings*, 480 F. Supp. 2d 213, 218 (D.D.C. 2007) (The All Writs Act "itself is not a grant of jurisdiction, and does not provide a basis for [a] cause of action." (internal quotation marks and citation omitted)). In any event, the complaint's personal-capacity claims with respect to these defendants are so lacking in factual or legal support as to warrant dismissal under Rule 12(b)(1). *See Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) ("A complaint may be dismissed on jurisdictional grounds when it is patently insubstantial, presenting no federal question suitable for decision." (internal quotation marks and citation omitted)).

Accordingly, to the extent that Plaintiff intended to sue the Federal Defendants named in the complaint in their personal capacities, those claims must be dismissed.

### B. Plaintiff's Claims Against The United States

#### 1. Sovereign Immunity Bars Plaintiff's Claims Against the United States For Monetary Damages

With respect to Plaintiff's claim for money damages against the federal agencies, the United States Senate, and the above named high-level officials in their official capacities, the Court notes that sovereign immunity ordinarily shields the federal government, its agencies, and its officials from lawsuits. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." (citations omitted)). Sovereign immunity is "'jurisdictional in nature[,]'" *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79 (D.D.C. 2012) (quoting *Meyer*, 510 U.S. at 475) (other citations omitted), and although

the government may waive immunity, such a waiver "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, waives the sovereign immunity of the United States with respect to "claims arising from certain torts committed by federal employees in the scope of their employment." *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674); *see also Peter B. v. United States*, 579 F. Supp. 2d 78, 82 (D.D.C. 2008) ("The [FTCA] waives the sovereign immunity of the United States with respect to some, but not all, torts.") (internal quotation marks and citations omitted). The FTCA generally states that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. However, the United States has not consented to be sued for damages based either on constitutional violations, *see Meyer*, 510 U.S. at 476-78, or on its failure "to carry out a federal statutory duty in the conduct of its own affairs." *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009) (citation and internal quotation marks omitted).

Among other things, the instant complaint at best alleges claims for money damages against the United States and its agencies for violating the FOIA (Count 1) and also for violating Plaintiff's rights under the Constitution's equal protection clause (Count 2)—neither of which is cognizable under the FTCA. *See Meyer*, 510 U.S. at 476-78. Plaintiff cannot state any tort claim for monetary damages regarding any FOIA

request he may have made because "no money damages are available under FOIA. The sole remedy available to a requester is injunctive relief[.]" *Roman v. Nat'l Reconnaissance Off.*, 952 F. Supp. 2d 159, 163 (D.D.C. 2013). Furthermore, there is no waiver of sovereign immunity for constitutional violations, as explained above, and regardless, any tort claim is foreclosed because Plaintiff has not indicated that he has exhausted his FTCA administrative remedies by "first present[ing] the claim to the appropriate Federal agency[.]" 28 U.S.C. § 2675; *see also Abdurrahman v. Engstrom*, 168 F. App'x 445, 445 (D.C. Cir. 2005) (per curiam) (affirming the district court's dismissal of unexhausted FTCA claim "for lack of subject matter jurisdiction").

Consequently, it is clear beyond cavil that the FTCA's waiver does not apply with respect to Plaintiff's claims, and sovereign immunity bars any claim for money damages against the United States (including the U.S. Senate) and its agencies. *See McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) ("[S]overeign immunity extends to the United States Congress when it is sued as a branch of the government." (citing *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam))).[4]

---

[4] The Court will not address whether the Speech or Debate Clause precludes Plaintiff's claims against the Senate, given that an individual legislator has not been sued. *See Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 9 (D.C. Cir. 2006) ("The Speech or Debate Clause protects a Member's conduct if it is an integral 'part of . . . the due functioning of the [legislative] process.'") (quoting *United States v. Brewster*, 408 U.S. 501, 516 (1972)). The Court notes, however, that plaintiff has not disputed Defendants' argument that the Clause shields the U.S. Senate from this lawsuit. (*See* Def.'s Mem. at 15-16; Feb. 18, 2014 Order (advising plaintiff that his failure to respond to dispositive motion could result in matter being treated as conceded)). *See also Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (stating that "[i]t is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004).

### 2. The Derivative Jurisdiction Doctrine Bars All Of Plaintiff's Claims Against The Federal Defendants

An independent jurisdictional bar—the derivative jurisdiction doctrine—likewise compels dismissal of all of Plaintiff's claims against the Federal Defendants, including his claims for equitable relief. (*See, e.g.*, Compl. at 37 (requesting that the Court "issue an Order and Injunction that permits [] the Plaintiff(s) Dr. Kennan Cofield . . . [to] have the right to compete fairly and equally . . . without obstruction from the United States government")). As the Supreme Court has explained, "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922); *see also Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 244 (4th Cir. 2007) ("The derivative-jurisdiction doctrine arises from the theory that a federal court's jurisdiction over a removed case derives from the jurisdiction of the state court from which the case originated."). "To determine whether this Court lacks subject matter jurisdiction by virtue of the doctrine of derivative jurisdiction, the threshold determination is whether, prior to removal, the Superior Court for the District of Columbia had jurisdiction of the subject matter or of the parties." *McKoy-Shields*, 2012 WL 1076195, at *2. If the Superior Court did not, this Court cannot "acquire" jurisdiction upon removal, even if Plaintiff could have filed his complaint in federal court in the first instance. *Lambert Run Coal*, 258 U.S. at 382. As discussed *supra* in Section III.B.1, Plaintiff's claim for monetary damages against the Federal Defendants must be brought under the FTCA, which not only waives sovereign immunity under some circumstances but also confers "exclusive" jurisdiction in the federal courts. 28 U.S.C. §§ 1346(b), 2679(a). The federal courts likewise have exclusive jurisdiction over any claim Plaintiff may be asserting under the FOIA and the

Privacy Act. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(5). And both the All Writs Act and the Declaratory Judgment Act—the remaining statutory sources for obtaining the equitable relief Plaintiff seeks—also confer jurisdiction exclusively in the federal courts. *See* 28 U.S.C. §§ 1651, 2201. This means that the Superior Court did not have jurisdiction over Plaintiffs' claims against the Federal Defendants in the first place, and given that this matter was removed to federal court under 28 U.S.C. §§ 1442 and 1446, this Court cannot assert jurisdiction over them on removal.[5]

### C. Defendant's Non-Jurisdictional Arguments For Dismissal

Having concluded that this Court lacks jurisdiction over Plaintiff's claims against the Federal Defendants, this Court will not address the Defendants' other grounds for dismissal, including the more complicated question of whether Plaintiff lacks standing to sue as to Count 2 of the Complaint.[6] Judges in this jurisdiction have remanded removed cases to Superior Court to resolve remaining issues after a finding that the derivative jurisdiction doctrine precludes the Court's exercise of jurisdiction

---

[5] Section 1442 of Title 28 of the United States Code has long been interpreted to require that the jurisdiction of the federal court be assessed in part relative to the jurisdiction of the state court from which the case was removed. Such is not the case for removals effectuated under section 1441, which contains specific language to the effect that the derivative jurisdiction doctrine shall not apply. *See* 28 U.S.C. § 1441(f) (stating that "[t]he court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim"). "Although Congress has chosen to abrogate the derivative jurisdiction doctrine for removals effectuated under 28 U.S.C § 1441, application of the derivative jurisdiction doctrine remains valid where, like here, cases are removed under 28 U.S.C § 1442." *McKoy-Shields*, 2012 WL 1076195, at *2 (citations omitted).

[6] As far as standing is concerned, the Supreme Court has instructed that, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [as opposed to a motion for summary judgment], we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)). But the Supreme Court has also "held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted; internal quotation mark in original). Although the allegations of the complaint appear to fall into the general grievance category, this Court cannot state with certainty that, if given the opportunity to amend the complaint to clarify Count 2, Plaintiff would be unable to satisfy the standing requirement.

over a plaintiff's claims, *see, e.g.*, *McKoy-Shields*, 2012 WL 1076195, at *2-3, and this Court finds no reason to depart from that practice here.

## IV. CONCLUSION

For the reasons stated above, this Court concludes that it lacks jurisdiction over Plaintiff's claims against the Federal Defendants. As a result, as set forth in the order that accompanies this opinion, the Federal Defendants' motion to dismiss the claims against them under Rule 12(b)(1) is **GRANTED**, and the remainder of this action is **REMANDED** to the Superior Court of the District of Columbia.


Date: August 20, 2014                    *Ketanji Brown Jackson*
                                         KETANJI BROWN JACKSON
                                         United States District Judge